Birdie Amsterdam, J.
Petitioners herein made application for an order pursuant to ¡subdivision (b) of CPLR 7503 staying arbitration between the parties hereto commenced by service of respondent’s demand for arbitration. Special Term, by order dated January 15, 1971, stayed arbitration pending a trial of the issues of fact raised by the petition and answer as to the validity and effectiveness of the underlying agreements to arbitrate and the. exact nature of the dispute.
The demand for arbitration refers to three contracts: a 1958 agreement and the January, 1959 and October 29, 1964 agreements. However, at the trial herein held before me, respondent withdrew with prejudice any claims for arbitration against the petitioners under the alleged 1958 agreement, and against the *515 petitioner Garden State Laminating, Inc., under the 1959 agreement.
The undisputed evidence disclosed that since January, 1959, to and including the present, petitioner Groval Knitted Fabrics, Inc. (hereinafter ‘ Groval”), is a New York corporation engaged in the business of converting of textiles; petitioner Gabriel Semo is the president, a director and majority shareholder (51%) in Groval; petitioner Irving Bremen is the secretary, a director and minority shareholder (15%) in the corporation, and respondent, Fred Alcott, is the treasurer, a director and minority shareholder (34%) therein. The three make up Groval’s -board of directors.
The contract dated January, 1959 is an agreement between respondent Alcott, petitioner Semo, petitioner Bremen, and the corporate petitioner Groval. Under it, Alcott who then owned all of the Groval stock, sold a majority of the stock to Semo and Bremen. The agreement provides that so long as they remain stockholders, the officers thereof shall be as follows: Semo, president, Bremen, secretary, Alcott, treasurer; and these three ¡shall constitute the board of directors. It also provides for the .employment of each of them: Semo to be in charge of general supervision and administration of the affairs of the corporation and to receive an annual payment of $12,000; Alcott to assist in the general supervision and administration of the affairs of the corporation and to receive an annual payment of $6,000; Alcott and Semo are only required to devote such time and attention to the business of the corporation as each shall deem to be necessary; and Bremen to devote his full time and attention to the business of the corporation as its sales manager and salesman and to receive an annual payment of $10,000. The agreement further provides for the submission to arbitration “ of any controversy or dispute in relation to or arising under this agreement.” At all times Alcott, Semo and Bremen each received the afore-stated annual salaries, but on March 31,1970, Alcott’s salary was terminated.
The contract dated October 29,1964 is an agreement between the corporate petitioner Groval, petitioner Garden State Laminating, Inc. (hereinafter “ Garden State ”), a New Jersey corporation, and one Louis Pantano. Garden State’s business is bonding foam to Groval’s textiles. The agreement provides that Pantano is to be president at an annual salary of $20,000; that Garden State agrees to employ “ a designee or designees of Groval ” during the term of the agreement and that the said designee or designees shall devote as much time and attention *516 to the business of Garden State as shall be necessary; that for their services, Garden State shall pay the aggregate annual salary of $12,000. The agreement further provides for the submission to arbitration of any controversy or dispute or claimed breach in relation to or arising under the agreement. It also provides that the agreement shall be binding upon and shall inure to the benefit of the parties thereto and their respective successors, assigns, heirs, executors, administrators and legal representatives.
The evidence established that the officers thereof were Pantano, president (as heretofore noted), Semo as vice-president and a director, Bremen as secretary and a director, and Alcott as treasurer and a director, and that Garden State is controlled by Groval. At all times Alcott, Semo and Bremen each received one third of the $12,000 annual salary allotted for “ a designee or designees of Groval ”, but on March 31, 1970, Alcott’s salary was terminated.
Arbitration is sought by respondent Alcott by reason of the termination of his salary. He asserts, inter alia, that Semo and Bremen have injured him personally by wrongfully shutting him out of management though he is and at all times has been treasurer, a director and more than one-third shareholder in Groval; that they have deprived him of both his contractual salary, which they terminated on March 31,1970, and the salary increments they have taken for themselves in excess of the limits set forth in the agreement, all in direct breach of the specific provisions of the 1959 agreement.
Petitioners contend that respondent’s claim depicts injuries to- Groval in the nature of a shareholder’s derivative action; that his claims present no arbitrable matters; that the termination of payments to respondent was the result, inter alia, of respondent’s acting unilaterally to withdraw his personal guarantees upon which the bank credit of Groval depended; that negotiations for the acquisition of Groval by another company were discontinued because Alcott and Semo were in disagreement ; and that he failed' to perform required duties and services for Groval.
CPLR 7501 provides that ‘ A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the" courts of the state to enforce it and to enter judgment on an award. In determining any matter arising under this article, the court shall not consider whether the claim with respect to *517 which arbitration is sough is tenable, or otherwise pass upon the merits of the dispute.”
This section precludes the court from considering “ whether the claim with respect tq which arbitration is sought is tenable, ■or otherwise pass upon the merits of the dispute”. For this reason neither evidence of the merits of respondent’s dispute with petitioners nor evidence relating to the allegations made against respondent by petitioners is relevant to the determination of this proceeding.
In regard to the 1959 agreement, upon examination of the asserted disputes in this close corporation, I find and am of the considered opinion that they fall within -the scope of the arbitration clause set forth therein; that petitioners have made no showing that the controversy between respondent and the petitioners Semo, Bremen and Groval is not a proper subject for arbitration, and there is no basis for a stay.
Anent the October 29, 1964 contract, petitioners contend that because respondent Alcott is not a signatory of or identified beneficiary thereunder, he cannot demand arbitration under it. Respondent maintains that though not identified as a designee, he is indeed and in fact a third-party beneficiary.
This agreement provides for the employment by Garden State of a designee or designees of Groval at a stated aggregate salary by Garden State. The undisputed evidence established that respondent was in fact designated by Groval to that employment — the designees by Groval were Alcott, Semo and Bremen (the three officers directors of Groval), and Garden State split the stated annual salary of $12,000 equally between them until March 31,1970, when respondent was shut out.
“ It is not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made.” (Restatement, Contracts, § 139; 2 Williston, Contracts [3d ed.], § 378, p. 954.)
In regard to the 1964 agreement, upon examination of the asserted disputes, I find and am of the considered opinion that they fall within the scope of the arbitration clause set forth therein and respondent is entitled to seek arbitration of the claimed breach of any rights he may have thereunder.
I do not pass upon the merits of the disputes to be arbitrated. I decide .only that, when viewed against the factual background of the case, the arbitration clause contained in the agreements ecompasses the controversy which has arisen and that such controversy is a proper subject for arbitration.
*518 Accordingly, petitioners ’ applications for a stay of arbitration is denied and the parties are directed to proceed to arbitration in accordance with the agreements.
Settle judgment. ¿